SEP 24 2026 PM1:15 FILED - USDC - FLMD - TPA

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

UNITED STATES OF AMERICA

v. CASE NO. 8:26-cr-314-MSS-NHA

PETER WYRO

18 U.S.C. § 371
(Conspiracy)

# INFORMATION

The United States Attorney charges:

## COUNT ONE
(Conspiracy)

### A. Introduction

At times material to this Information:

1. Defendant PETER WYRO was a resident of Oklahoma.

2. Beginning in or around June 2023, through in or around December 2023, WYRO helped facilitate the sale and distribution of a misbranded, counterfeit version of the prescription drug Ozempic in the Middle District of Florida and elsewhere.

*The Food and Drug Administration's Regulation of the Prescription Drug Supply Chain*

3. The United States Food and Drug Administration ("FDA") was the federal agency charged with the responsibility of protecting the health and safety of the American public by, among other things, enforcing the Federal Food, Drug, and Cosmetic Act ("FDCA"), 21 U.S.C. § 301, *et seq.*

**FDCA Definitions**

4. The term "drug" was defined under the FDCA to include articles that (1) were intended for use in the diagnosis, cure, mitigation, treatment, or prevention of disease; and (2) that were intended to affect the structure or any function of the body. 21 U.S.C. §§ 321(g)(1)(B) and (C).

5. The term "prescription drug" was defined under the FDCA to include "a drug intended for use by man which because of its toxicity or other potentiality for harmful effect, or the method of its use, or the collateral measures necessary to its use, is not safe for use except under the supervision of a practitioner licensed by law to administer such drug." 21 U.S.C. § 353(b)(1)(A).

6. The term "counterfeit drug" was defined under the FDCA as "a drug which, or the container or labeling of which, without authorization, bears the trademark, trade name, or other identifying mark, imprint, or device, or any likeness thereof, of a drug manufacturer, processor, packer, or distributor other than the person or persons who in fact manufactured, processed, packed, or distributed such drug and which thereby falsely purports or is represented to be the product of, or to have been packed or distributed by, such other drug manufacturer, processor, packer, or distributor." 21 U.S.C. § 321(g)(2).

**The Drug Supply Chain Security Act ("DSCSA")**

7. The FDCA included specific requirements to enhance the security of the prescription drug supply chain in the United States and protect patients from counterfeit drugs. These requirements were added to the FDCA by the DSCSA,

codified at 21 U.S.C. § 360eee, *et seq.* The DSCSA governed various aspects of prescription drug distribution and established labeling requirements that protected the United States prescription drug supply chain from counterfeit drugs. For example, the DSCSA required drug manufacturers to include a "product identifier" on each package and homogenous case of a product intended for distribution. 21 U.S.C. § 360eee-1(b)(2)(A). The "product identifier" included a "standardized numerical identifier" with a unique alphanumeric serial number. 21 U.S.C. §§ 360eee(14), (20). The unique serial number requirement strengthened the ability of drug manufacturers and the FDA to identify suspect, illegitimate, and counterfeit drugs.

8. A drug was misbranded if it was a drug and failed to bear the required product identifier on the package. 21 U.S.C. § 352(cc). It was a prohibited act under the FDCA to introduce, or deliver for introduction, a misbranded drug into interstate commerce, or to cause the introduction, or delivery for introduction, into interstate commerce of a misbranded drug. 21 U.S.C. § 331(a). It was also a prohibited act under the FDCA to fail to comply with the unique serial number requirement of the DSCSA. 21 U.S.C. § 331(t).

*The Counterfeit Drug*

9. Ozempic was the brand name for an FDA-approved prescription drug manufactured by Novo Nordisk A/S ("Novo Nordisk"), a pharmaceutical manufacturer based in Denmark. Ozempic contained the active pharmaceutical ingredient semaglutide and was approved by the FDA for distribution in the United

States. Ozempic was indicated to improve glycemic control in adults with type 2 diabetes mellitus. Ozempic was also approved to reduce the risk of cardiovascular events in adults with type 2 diabetes mellitus and known heart disease. At all times relevant to this Information, Ozempic was administered through an injection pen and was a prescription drug, and thus available only with a prescription.

10. WYRO helped facilitate the sale and distribution of a counterfeit version of Ozempic that included counterfeit containers (the outer packaging of the drug), counterfeit labeling, and counterfeit needles. Many units of the product did not include unique serial numbers. Instead, the product displayed false and fraudulent serial numbers on containers that were designed to mimic the packaging manufactured by Novo Nordisk for authentic Ozempic that was lawfully distributed in the United States.

B. <u>The Conspiracy</u>

11. Beginning on an unknown date, but no later than in or around June 2023, and continuing through at least December 2023, in the Middle District of Florida and elsewhere, the defendant,

PETER WYRO,

did knowingly and voluntarily combine, conspire, confederate, and agree with Swapnadip Roy, Vicky Ramancha, and other persons, both known and unknown to the United States Attorney, to commit ~~the following~~ an offense against the United States: ~~smuggling, in~~ a violation of 18 U.S.C. § 545.

PJL

RW

RM

C. The Manner and Means of the Conspiracy

12. The manner and means by which the conspirators sought to accomplish the objects of the conspiracy included, among others, the following:

a. It was a part of the conspiracy that conspirators would and did facilitate the sale, purchase, and distribution of discounted product labeled as "Ozempic" from a source in the United Arab Emirates that was not licensed to sell prescription drugs in the United States and was not an authorized distributor of Novo Nordisk;

b. It was a further part of the conspiracy that the conspirators would and did store the product in warehouses in the United States and distributed the product to the Middle District of Florida and elsewhere;

c. It was a further part of the conspiracy that the conspirators would and did conceal the role of Roy, Ramancha, and their companies in the distribution scheme;

d. It was a further part of the conspiracy that the conspirators would and did utilize fraudulent documentation to make it appear that the product was sold by Novo Nordisk directly to a licensed wholesaler in the United States;

e. It was a further part of the conspiracy that the conspirators would and did continue with the distribution scheme after being notified that the products were not in compliance with United States law; and

f. It was a further part of the conspiracy that the conspirators would and did engage in multiple meetings, perform acts, and make statements to promote

and achieve the objects of the conspiracy and to misrepresent, hide, and conceal the conspiracy and the acts committed in furtherance thereof.

D. <u>Overt Acts</u>

13. In furtherance of the conspiracy, and to effect its objects, the defendant and other conspirators committed the following overt acts, among others, in the Middle District of Florida and elsewhere:

a. On or about July 12, 2023, Ramancha executed a Sales and Purchase Agreement with a co-conspirator based in Lakeland, Florida for the sale of 5,000 units of Ozempic at $260 – 280 per unit, which was far below the market price of Ozempic in the United States;

b. On or about August 18, 2023, Ramancha executed a Master Sale and Purchase Agreement with a co-conspirator based in Sanford, Florida, for the sale of 1,000 units of Ozempic at $300 per unit, which was far below the market price of Ozempic in the United States;

c. On or about September 15, 2023, Roy and Ramancha facilitated the shipment of approximately 47 units of product labeled as "Ozempic" to a purchaser based in Lakeland, Florida;

d. In or around October 2023, WYRO worked with co-conspirators to store the product supplied by Roy and Ramancha at a warehouse in the State of New York;

e. On or about November 18, 2023, WYRO notified Ramancha that the product supplied by Roy and Ramancha did not have unique serial numbers in violation of U.S. law;

f. On or about November 19, 2023, Ramancha sent a WhatsApp message to WYRO and several co-conspirators, stating: "we have to make sure that who ever you are engaging with is under NDA and keeps their mouth shut and dosent [sic] make any headache going to fda and this and that…If anyone makes too much noise then it will be very big problem;"

g. On or about November 21, 2023, a co-conspirator facilitated the sale of purported Ozempic supplied by Roy and Ramancha to a pharmacy in the St. Petersberg, Florida;

h. On or about December 7, 2023, WYRO notified Ramancha that purported Ozempic distributed by Roy and Ramancha was "under warrant" and could not be distributed; and

i. On or about December 8, 2023, a co-conspirator based in Sanford, Florida executed an agreement to purchase 60,000 additional units of Ozempic from Ramancha.

All in violation of 18 U.S.C. § 371.

FORFEITURE

1. The allegations contained in Count One of this Information are hereby realleged and incorporated by reference for the purpose of alleging forfeiture pursuant to the provisions of 18 U.S.C. § 982(a)(2)(B) and 28 U.S.C. § 2461(c).

2. Upon a conviction of a conspiracy to violate 18 U.S.C. § 545, the defendant,

PETER WYRO,

shall forfeit to the United States, pursuant to 18 U.S.C. § 982(a)(2)(B), any property constituting, or derived from, proceeds WYRO obtained directly or indirectly as a result of the violation.

3. If any of the property described above, as a result of any acts or omission of the defendant:

a. cannot be located upon the exercise of due diligence;

b. has been transferred or sold to, or deposited with, a third party;

c. has been placed beyond the jurisdiction of the Court;

d. has been substantially diminished in value; or

e. has been commingled with other property, which cannot be divided without difficulty,

the United States shall be entitled to forfeiture of substitute property pursuant to 21 U.S.C. § 853(p), as incorporated by 18 U.S.C. § 982(b)(1) and 28 U.S.C. § 2461(c).

GREGORY W. KEHOE
United States Attorney

By: ______________________
Ross Roberts
Assistant United States Attorney

By: ______________________
Michael Kenneth
Assistant United States Attorney
Chief, Economic Crimes Section

By: ______________________
Peter Leininger
Trial Attorney
U.S. Department of Justice